**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

UNITED STATES OF AMERICA,

**Plaintiff,**

v.                                                    CIVIL NO. 98-1082 (DRD)

ONE YOLA TYPE VESSEL WITH P.R.
REGISTRATION PR3503BB VALUED
AT APPROXIMATELY $25,400.,

**Defendant.**

---

## ORDER

The Plaintiff, United States of America, on March 3, 1999, filed a Motion For Summary

Judgment. (Docket No. 22). The Court later granted Claimants, Pedro Vivas and Jorge Colon

(collectively "Claimants"), special term of ten (10) days after resolution of a pending motion to

dismiss. The Claimants timely filed a response on September 7, 1999. (Docket No. 26).

### SUMMARY JUDGMENT STANDARD

The function of summary judgment is "to pierce the boilerplate of the pleadings and

examine the parties' proof to determine whether a trial is actually necessary" Vega-Rodriguez v.

Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997) (citing Wynne v. Tufts Univ. Sch. of

Med., 976 F.2d 791, 794 (1st Cir. 1992)). Summary judgment is appropriate "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary

judgment bears the initial responsibility of demonstrating the absence of a genuine issue of

material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265

(1986). The opposing party must then designate specific facts that show that there is a genuine

triable issue. Id. at 324, 106 S.Ct. at 2553; Fed. R. Civ. P. 56(e).

At the summary judgment level, the evidence must be examined "drawing all reasonable

inferences helpful to the party resisting summary judgement." Cortes-Irizarry v. Corporación

Insular De Seguros, 111 F.3d 184, 187 (1st Cir. 1997)); see United States v. Diebold, Inc., 369

U.S. 654, 655 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam) ("On summary judgement

the inferences to be drawn from the underlying facts [] must be viewed in the light most

favorable to the party opposing the motion."). In order to survive the "swing of the summary

judgment axe," Mack v. Great Atlantic and Pacific Tea Co., Inc., 871 F.2d 179, 181 (1st Cir.

1989), the mover must satisfactorily show that there is a "genuine issue of material fact" left to

be tried. Ayala Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996). A fact is

deemed "material" if the same "potentially affect[s] the suit's determination." Garside v. Osco

Inc., 895 F.2d 46, 48 (1st Cir. 1990). "An issue concerning such a fact is 'genuine' if a

reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to

the party resisting summary judgment, could resolve the dispute in that party's favor." Cortes-

Irizarry v. Corporacion Insular, 111 F.3d at 187. If the party opposing summary judgment

"generates uncertainty as to the true state of any material fact, the procedural weapon of

summary judgement is inappropriate." Beacon Enters. v. Menzies 715 F.2d 757, 762 (2nd Cir.

1983). At this stage, there is "no room for the measured weighing of conflicting evidence such

as the trial process entails, no room for the judge to superimpose his own ideas of probability and

-2-

likelihood ... ." <u>Greenburg v. Puerto Rico Maritime Shipping Auth.</u>, 835 F.2d 932, 936 (1st Cir. 1987).  Moreover, "summary judgment procedures should be used sparingly ... where issues of motive and intent play leading roles." <u>Poller v.Columbia Broadcasting System</u>, 368 U.S. 464, 473, 82 S.Ct. 486, 491 (1st Cir. 1988).  Trial courts should observe a "cautious approach to summary judgments where issues of motive and intent must be resolved." <u>William Cote V. P.B. Diagnostics Systems, Inc.</u>, 50 F.3d 1115, 1121 (1st Cir. 1995) (citing <u>Oliver v. Digital Equipment Corp.</u>, 846 F2d 103, 107 (1st Cir. 1988)).  Notwithstanding, "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." <u>Medina-Muñoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5 (1st Cir. 1990) (recently cited at <u>Ayala Gerena</u>, 95 F.3d at 86).

## ANALYSIS

The instant Verified Complaint for Forfeiture In Rem was filed on January 30, 1998. (Docket No. 1).  The Claimants now reiterated their argument previously presented in their motion to dismiss and reply (Docket Nos. 20, 24), which requested dismissal due to the Plaintiff's failure to comply with the 60 days filing requirement after claim and cost bond have been filed under 21 U.S.C. § 888(c).  The United States had opposed the motion to dismiss (Docket No. 21), asserting that as the text of § 888(c) states the section only applies to "drug-related offenses" which were brought under 19 U.S.C. § 1608, whereas the present action is a customs action brought pursuant to 19 U.S.C. § 1703.

AO 72
(Rev 8/82)

Previously the Court held as follows:

"The Court must agree with the United States. The Complaint clearly states the action is being brought "to enforce the provisions of 19 U.S.C. § 1703 for the forfeiture of the defendant vessel which has been outfitted for smuggling." (Docket No. 1). Next, the text of 21 U.S.C. § 888(c) plainly states in pertinent part that "[n]ot later than 60 days after a claim and cost bond have been filed under section 1608 of Title 19 regarding a conveyance seized for a drug-related offense." Claimants present no legal interpretations that contradict this reading. The two cases cited by Claimants strictly applying the § 888(c) 60 day filing requirement to drug-related cases adds nothing to the issue before the Court. See United States v. Indoor Cultivation Equip., 55 F.3d 1311, 1314 (7th Cir. 1995); United States v. One White 1987 Tempest Sport Boat, 726 F.Supp. 7, 9-11 (D. Mass. 1989). And the Court "has no obligation to play nursemaid to indifferent parties." Pinto v. Universidad de Puerto Rico, 895 F.2d 18, 19 (1st Cir. 1990). Therefore, the motion (Docket No. 20), is hereby DENIED."

(Docket No. 25). The Court begins with the Verified Complaint.

Jurisdiction is proper under 28 U.S.C. §§ 1345 & 1355. The Verified Complaint states

that "[t]his civil action in rem brought to enforce the provisions of 19 U.S.C. § 1703[1] for the

_____

[1] The text of 19 U.S.C. § 1703 is:

"(a) Vessels subject to seizure and forfeiture

Whenever any vessel which shall have been built, purchased, fitted out in whole or in part, or held, in the United States or elsewhere, for the purpose of being employed to defraud the revenue or to smuggle any merchandise into the United States, or to smuggle any merchandise into the territory of any foreign government in violation of the laws there in force, if under the laws of such foreign government any penalty or forfeiture is provided for violation of the laws of the United States respecting the customs revenue, or whenever any vessel which shall be found, or discovered to have been, employed, or attempted to be employed, within the United States for any such purpose, or in anywise in assistance thereof, or whenever any vessel of the United States which shall be found, or discovered to have been, employed, or attempted to be employed at any place, for any such purpose, or in anywise in assistance thereof, if not subsequently forfeited to the United States or to a foreign government, is found at any place at which any such vessel may be examined by an officer of the customs in the enforcement of any law respecting the revenue, the said vessel and its cargo shall be seized and forfeited.

(b) "Vessels of the United States" defined

-4-

forfeiture of the defendant vessel which has been outfitted for smuggling."  Further, the

"[d]efendant vessel is a 'yola' type vessel with P.R. Registration PR3503BB seized from Pedro

Vivas and Jorge Colón Díaz for violation of Title 19 §§ 1703, 1433,[²] and 1436.[³]"  The United

---

Every vessel which is documented, owned, or controlled in the United States, and every vessel of foreign registry which is, directly or indirectly, substantially owned or controlled by any citizen of, or corporation incorporated, owned, or controlled in, the United States, shall, for the purposes of this section, be deemed a vessel of the United States.

(c) Acts constituting prima facie evidence vessel engaged in smuggling

For the purposes of this section, the fact that a vessel has become subject to  pursuit as provided in section 1581 of this title, or is a hovering vessel, or that a vessel fails, at any place within the customs waters of the United States or within a customs-enforcement area, to display lights as required by law, shall be prima facie evidence that such vessel is being, or has been, or is attempted to be employed to defraud the revenue of the United States."

² 19 U.S.C. § 1433 reads as follows:

"(a) Vessel arrival

(1) Immediately upon the arrival at any port or place within the United States or the Virgin Islands of--
(A) any vessel from a foreign port or place;
(B) any foreign vessel from a domestic port;
(C) any vessel of the United States carrying bonded merchandise, or foreign merchandise for which entry has not been made;  or
(D) any vessel which has visited a hovering vessel or received merchandise while outside the territorial sea;

the master of the vessel shall report the arrival at the nearest customs facility or such other place as the Secretary may prescribe by regulations.
(2) The Secretary may by regulation--
(a) prescribe the manner in which arrivals are to be reported under paragraph (1);  and
(b) extend the time in which reports of arrival must be made, but not later than 24 hours after arrival.

(b) Vehicle arrival

(1) Vehicles may arrive in the United States only at border crossing points designated by the

AO 72
(Rev 8/82)

Secretary.

(2) Except as otherwise authorized by the Secretary, immediately upon the arrival of any vehicle in the United States at a border crossing point, the person in charge of the vehicle shall--

(A) report the arrival; and

(B) present the vehicle, and all persons and merchandise (including baggage) on board, for inspection;

to the customs officer at the customs facility designated for that crossing point.

(c) Aircraft arrival

The pilot of any aircraft arriving in the United States or the Virgin Islands from any foreign airport or place shall comply with such advance notification, arrival reporting, and landing requirements as the Secretary may by regulation prescribe.

(d) Presentation of documentation

The master, person in charge of a vehicle, or aircraft pilot shall present, or transmit pursuant to an electronic data interchange system, to the Customs Service such information, data, documents, papers, or manifests as the Secretary may by regulation prescribe.

(e) Prohibition on departures and discharge

Unless otherwise authorized by law, a vessel, aircraft or vehicle after arriving in the United States or Virgin Islands may, but only in accordance with regulations prescribed by the Secretary--

(1) depart from the port, place, or airport of arrival; or

(2) discharge any passenger or merchandise (including baggage)."

[3] 19 U.S.C. § 1436 provides as follows:

"(a) Unlawful acts

It is unlawful--

(1) to fail to comply with section 1431, 1433, or 1434 of this title or section 91 of the Appendix to Title 46;

(2) to present or transmit, electronically or otherwise, any forged, altered, or false document, paper, information, data or manifest to the Customs Service under section 1431, 1433(d), or 1434 of this title or section 91 of the Appendix to Title 46 without revealing the facts;

(3) to fail to make entry or to obtain clearance as required by section 1434 or 1644 of this title, section 91 of the Appendix to Title 46, or section 1509 of the Appendix to Title 49; or

(4) to fail to comply with, or violate, any regulation prescribed under any section referred to in

-6-

States also contends that the vessel upon inspection violated 33 C.F.R. § 183.520[4] by having an

improper gas tank.  Further, the vessel violated 19 U.S.C. § 1703 because of its camouflage

_____

any of paragraphs (1) through (3).

(b) Civil penalty

   Any master, person in charge of a vehicle, or aircraft pilot who commits any violation listed in
subsection (a) of this section is liable for a civil penalty of $5,000 for the first violation, and
$10,000 for each subsequent violation, and any conveyance used in connection with any such
violation is subject to seizure and forfeiture.

(c) Criminal penalty

   In addition to being liable for a civil penalty under subsection (b) of this section, any master,
person in charge of a vehicle, or aircraft pilot who  intentionally commits any violation listed in
subsection (a) of this section is, upon conviction, liable for a fine of not more than $2,000 or
imprisonment for 1 year, or both;  except that if the conveyance has, or is discovered to have had,
on board any merchandise (other than sea stores or the equivalent for conveyances other than
vessels) the importation of which into the United States is prohibited, such individual is liable for
an additional fine of not more than $10,000 or imprisonment for not more than 5 years, or both.

(d) Additional civil penalty

   If any merchandise (other than sea stores or the equivalent for conveyances other than a vessel)
is imported or brought into the United States in or aboard a conveyance which was not properly
reported or entered, the master, person in charge of a vehicle, or aircraft pilot shall be liable for a
civil penalty equal to the value of the merchandise and the merchandise may be seized and
forfeited unless properly entered by the importer or consignee.  If the merchandise consists of
any controlled substance listed in section 1584 of this title, the master, individual in charge of a
vehicle, or pilot shall be liable to the penalties prescribed in that section."

   [4] The 33 C.F.R. § 183.520 includes:

"§ 183.520 Fuel tank vent systems.

   (a) Each fuel tank must have a vent system that prevents pressure in the tank from exceeding 80
percent of the pressure marked on the tank label under § 183.514(b)(5).
   (b) Each vent must:
   (1) Have a flame arrester that can be cleaned unless the vent is itself a flame arrestor;  and
   (2) Not allow a fuel overflow at the rate of up to two gallons per minute to enter the boat."

AO 72
(Rev 8/82)

painting.  The United States summarizes its cause of action "[i]n light of the above, the defendant vessel is a vessel outfitted for smuggling within the meaning of 19 U.S.C. § 1703, and therefore is forfeitable to the United States of America." (Docket No. 1).

Succinctly expressed, does this forfeiture action pursuant to 19 U.S.C. § 1703 for the above enumerated reasons fall within the purview of 21 U.S.C. § 888(c)?  21 U.S.C. § 888(c) reads as follows:

> "Not later than 60 days after a claim and cost bond have been filed under section 1608 of Title 19 regarding a conveyance seized for a drug-related offense, the Attorney General shall file a complaint for forfeiture in the appropriate district court, except that the court may extend the period for filing for good cause shown or on agreement of the parties.  If the Attorney General does not file a complaint as specified in the preceding sentence, the court shall order the return of the conveyance to the owner and the forfeiture may not take place."

21 U.S.C. § 888(c).  Clearly 19 U.S.C. § 1608 applies to this forfeiture action pertaining to a vessel whose seizure was effectuated by Luis A. Torres, Marine Enforcement Officer with the U.S. Customs Service.  See 19 U.S.C. § 1600 ("The procedures set forth in sections 1602 through 1619 of this title shall apply to seizures of any property effected by customs officers under any law enforced or administered by the Customs Service unless such law specifies different procedures.").  The evidence establishes "that the United States Customs Service seized the **conveyance** described below at the Port of Fajardo, P.R. on February 26, 1997: one 33' yola-type vessel, Registration No. PR3503BB having an approximate domestic value of $40,000.00." (Docket No. 26, Exhibit A) (emphasis added); see 21 U.S.C. § 888(c) ("Not later than 60 days after a claim and cost bond have been filed under section 1608 of Title 19 regarding a **conveyance** seized for a drug-related offense, the Attorney General shall file a complaint for forfeiture in the appropriate district court") (emphasis added).  Thus, whether the vessel was

-8-

"seized for a drug-related offense" becomes determinative.

Claimants, to substantiate their position, the following paragraph lifted from the notification sent to Claimant, Colon:

> "The property described above was seized and is subject to forfeiture under the provisions of title 19, United States Code, sections 1703, 1595a(a), 1433 and 1436 and title 8, United States Code, section 1325. Investigation conducted disclosed that the vessel failed to report arrival and is outfitted for smuggling. **There is reason to believe that the vessel was used to transport controlled substances into the United States contrary to law**."

(Docket No. 26, Exhibit A). The Court holds that the last sentence cited above from Claimants' proffered evidence creates an issue of material fact that precludes summary judgment. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. at 323-324, 106 S.Ct. at 2553; Poller v.Columbia Broadcasting System, 368 U.S. at 473, 82 S.Ct. at 491; Cortes-Irizarry v. Corporacion Insular, 111 F.3d at 187; Ayala Gerena v. Bristol Myers-Squibb Co., 95 F.3d at 94; William Cote V. P.B. Diagnostics Systems, Inc., 50 F.3d at 1121; Garside v. Osco Inc., 895 F.2d at 48; Greenburg v. Puerto Rico Maritime Shipping Auth., 835 F.2d at 936.

At this point, the Court turns to the United States' motion. Because the Claimants have presented no contradictory evidence, the United States statement of uncontested facts must be taken as true if supported by the record. See Local Rule 311.12 ("All material facts set forth in the statement required to be served by the moving party shall be deemed to be admitted unless controverted by the statement required by the opposing party."). The Court incorporates the United States' statement as follows:

> "1. On February 16, 1997 the defendant vessel was boarded by the U.S. Coast Guard Cutter ATTU Personnel at Culebra, P.R. Three individuals were aboard the vessel, Juan Berrios, Juan Garcia, and claimant, Pedro Vivas. (See attached as Exhibit I Affidavit of U.S. Customs Officer Luis A. Torres.)

-9-

2. After concluding the boarding, the vessel was released. Later that same day, the vessel was discovered to be at St. Thomas, U.S.V.I. and once again boarded. (See Exhibit I)

3. On February 17, 1997, U.S. Customs Agents discovered that the vessel had returned to Puerto Rico and had failed to report arrival in violation of Title 19 U.S.C. §§ 1433 and 1436, and proceeded to seize the vessel. (See Exhibit I)

4. That upon examination of the vessel, by the U.S. Customs Officer of the Marine Enforcement Unit, it was determined that:

a. defendant vessel is thirty-two (32) feet long;

b. defendant vessel is fitted with an internal fuel tank of approximately two hundred (200) gallons with no access to fuel fill or vent line connections in violation of 33 C.F.R. 183.520.

c. defendant vessel has two high power engines in excess of 85 horse power and specifically two, two hundred (200) horse power Yamaha engines; and

d. defendant vessel is painted dark green, the topsides grey, the sides and floors are painted gray with dark green spots inside the boat so that it would be difficult to spot the vessel when at see, in violation of Title 19 U.S.C. § 1703. (See Exhibit I)

5. Claimant Pedro Vivas has manufactured from two hundred something to three hundred boats (See attached as Exhibit II, transcript of the deposition to Pedro Vivas at page 13.)

6. Pedro Vivas does not know what are the necessary specifications to build a boat in accordance with the law. (Exhibit II at page 37)."

(Docket No. 22).

First, given the facts of this case – a Puerto Rico vessel left Fajardo, P.R., stopped first at Culebra, then St. Thomas, U.S.V.I., and then returned to Fajardo – a plain reading of 19 U.S.C. § 1433 (for text see footnote 2 above) does not, on its face, set forth a failure to report violation. The Plaintiff does not proffer evidence that these facts implicate that St. Thomas as a U.S. Virgin Island is a foreign port or place. See 19 U.S.C. § 1433(a)(1)(A). The vessel in question flies the American flag (Puerto Rico). See 19 U.S.C. § 1433(a)(1)(B); see also 19 CFR § 4.0(b) ("Vessel of the United States. The term 'vessel of the United States' means any vessel documented under the laws of the United States."). No merchandise or hovering vehicle has been mentioned. See 19 U.S.C. §§ 1433(a)(1)(C) & (a)(1)(D). Neither evidence nor legal authority presented supports

-10-

a holding that the vessel even left the United States waters, which would give rise to an arrival in the United States violation and in addition, the summary judgment record contains no evidence that Claimants' vessel departed from a port of arrival contrary to regulations. See 19 U.S.C. § 1433(e). Lastly, 19 U.S.C. § 1436 (for text see footnote 3 above) is the enforcement and penalties statute corresponding to a 19 U.S.C. § 1433 violation. Without an underlying violation of 19 U.S.C. § 1433, both 19 U.S.C. § 1433 and 19 U.S.C. § 1436 causes of action are not grounds for the granting of summary judgment.

Second, the inquiry now focuses on whether the preceding facts constitute a violation of under 19 U.S.C. § 1703 (for text see footnote 1 above), aside from the issue of whether the vessel was "seized for a drug-related offense".[5] The United States offers no legal authority to indicate that the above facts constitute a violation under § 1703. From a literal reading of the statute, the Court understands that the facts are insufficient to direct the granting of a summary judgment based on a § 1703 violation. The Court simply cannot hold, at this summary judgment juncture first, that there is no genuine issue of material fact and second, that the United States is entitled to judgment as a matter of law – as to Claimants' violation of the § 1703 section, without any legal authority (excepting the vent line violation) that mandates such finding. Plaintiff brought this summary judgment motion and must put its best foot forward. See e.g. CMM Cable Rep. Inc. v. Ocean Coast Properties, Inc., 97 F.3d 1504, 1526 (1st Cir. 1996) (Plaintiff "simply cannot expect to shirk its 'affirmative responsibility to put [its] best foot forward ... .'"); Ayala Gerena v.

_____

[5] No evidence has been offered that the vessel was used for narcotics trafficking other than the words, "There is reason to believe that the vessel was used to transport controlled substances into the United States contrary to law." See (Docket No. 26, Exhibit A).

-11-

AO 72
(Rev 8/82)

Bristol Myers-Squibb Co., 95 F.3d 86, 100 (1st Cir. 1996); United States v. Holmquist, 36 F.3d

154, 163 (1st Cir. 1994) ("As we have previously admonished, '[a] party has a duty to put its best

foot forward ... [and] to spell out its arguments squarely and distinctly.'" Id. (quoting

Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co., 840 F.2d 985, 990 (1st

Cir.1988); citing United States v. Boylan, 898 F.2d 230, 249 (1st Cir.) ("Litigants cannot expect a

judge ... to be clairvoyant."), cert. denied, 498 U.S. 849, 111 S.Ct. 139, 112 L.Ed.2d 106 (1990)).

WHEREFORE, the United States motion for summary judgment (Docket No. 22) is

**DENIED WITHOUT PREJUDICE.**[6]

**IT IS SO ORDERED.**

Date: March 9, 2000

P:\FINALORD ERS\98-1082 MSJ

**DANIEL R. DOMINGUEZ**
**U.S. DISTRICT JUDGE**

---

6 The Court notes, however, potential forfeiture for failure to report an entry of the vessel from the U.S. Virgin Islands to Puerto Rico pursuant to 19 U.S.C. § 1434, 19 U.S.C. § 1436, 19 U.S.C. § 1467. See United States v. Hyde, 37 F.3d 116, 121 (1st Cir. 1994) ("Thus, since the acquisition of the Virgin Islands, Congress has consistently asserted its authority to impose a border between the Virgin Islands and the rest of the United States for customs purposes and has authorized customs officials to search vessels and goods passing between the Virgin Islands and the rest of the country [including Puerto Rico].").

-12-